ROAM Capital, Inc. v Asia Alternatives Mgt., LLC (2023 NY Slip Op 02193)

ROAM Capital, Inc. v Asia Alternatives Mgt., LLC

2023 NY Slip Op 02193

Decided on April 27, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 27, 2023

Before: Renwick, A.P.J., González, Kennedy, Higgitt, JJ. 

Index No. 651728/19 Appeal No. 113 Case No. 2022-01318 

[*1]ROAM Capital, Inc., Plaintiff-Appellant,
v
Asia Alternatives Management, LLC, Defendant-Respondent.

Gibson, Dunn & Crutcher LLP, New York (Gabriel Herrmann of counsel), for appellant.
Pillsbury Winthrop Shaw Pittman LLP, New York (Adam Marcu of counsel), and Pillsbury Winthrop Shaw Pittman LLP, San Francisco, CA (Blaine I. Green of the bar of the State of California, admitted pro hac vice, of counsel), for respondent.

Order, Supreme Court, New York County (Jennifer Schecter, J.), entered March 10, 2022, which, to the extent appealed from, granted defendant's motion to dismiss the supplemental amended complaint (SAC) with prejudice pursuant to CPLR 3211, unanimously reversed, on the law, with costs, and the motion denied.
Plaintiff ROAM CAPITAL, INC. (ROAM), a placement agent based in Colombia, represents private equity firms seeking to raise capital from Latin America. Defendant Asia Alternatives Management LLC, a Chinese private equity firm that manages Asian "fund of funds," engaged plaintiff to provide private-placement services for its "Fund V" fundraising in Latin America. Section VII(H) of the parties' agreement, states that defendant "grants [plaintiff] a right of first refusal to provide, on an exclusive basis, the services described in Section I . . . in connection with [defendant]'s private placement in Latin America of [limited partner] Interests in [its] next . . . fund of funds [Fund VI] . . . in exchange for a fee . . . on all capital commitments" from certain investors.
Plaintiff commenced this action for breach of contract and related claims when defendant decided to raise funds on its own for Fund VI. in Latin America. Plaintiff asserts that it exercised its right of first refusal, and therefore section VII(H) prohibits defendant from trying to raise funds in Latin America by itself. According to defendant, the right of first refusal applied only if it decided to hire a placement agent. Supreme Court improperly dismissed ROAM's breach of contract and related claims because, contrary to defendant's contention, there is a conflict between New York and Colombian law as to the meaning of "right of first refusal." Under New York law, "right of first refusal" means plaintiff would get to provide services with respect to Fund VI only if defendant decided to ask a third party to provide the services (see LIN Broadcasting Corp. v Metromedia, Inc., 74 NY2d 54, 56 [1989]); "a right of first refusal does not, at the time it is given, include an operative offer" (id. at 60). By contrast, under Colombian law, a right of first refusal is akin to a preference pact (according to both sides' experts) or a right of option (according to plaintiff's expert). Given the wording of section VII(H) of the parties' agreement, a third party would not be required for a preference pact. Hence, New York law and Colombian law differ.
New York and Colombian law also differ because — according to plaintiff's expert, and not rebutted by defendant's expert — a right of first refusal could be a Colombian right of option. Plaintiff's expert explained that "for the Right of Option, the beneficiary's [(i.e., plaintiff's)] decision to exercise the right is sufficient, without requiring the grantor's [(i.e., defendant's)] action or acceptance." Defendant does not dispute that Colombian law applies if New York and Colombian law differ.
Defendant's contention that section VII(H[*2]) did not survive the end (whether by expiration or termination) of the original agreement is unavailing. Defendant's own expert stated, "Under Colombian law, the [right of first refusal] may exceed (andtherefore survive) the term of the underlying contract in force." Plaintiff's expert explained in detail that plaintiff's exercise of its section VII(H) right was timely, whether the section was construed as a preference pact or an option right.
As can be seen from the parties' expert affirmations, "right of first refusal" is not clear under Colombian law. Thus, even according to defendant's expert, extrinsic evidence is allowed. Although the contract contains a merger/integration clause, and Colombian law recognizes such a clause, this provision ("This Agreement . . . supersedes all previous agreements and understandings") does not bar consideration of evidence that postdates the contract.
The court's statement that "right of first refusal . . . has a clear meaning in the business community that all of these parties were members of" overlooks the allegations in the SAC that (1) defendant's interpretation of section VII(H) is "completely at odds with . . . the way the private equity industry operates" and (2) provisions like section VII(H) "are meant to protect the placement agent [(i.e., plaintiff)] from the fundmanager [(i.e., defendant)] and not from other placement agents, to ensure that the manager does not try to circumvent the agent for subsequent fund-raises." Based on the foregoing, the second cause of action (breach of contract) should not have been dismissed.
The first (duty to act in good faith), third (wrongful or negligent conduct), and fourth (unjust enrichment) claims state causes of action under Colombia Law. Article 83 of Colombia's Political Constitution provides that "[a]cts of private parties . . . must adhere to the tenets of good faith." Article 1603 of the Colombian Civil Code provides that "[c]ontracts must be performed in good faith"; and article 871 of Colombia's Commercial Code is to the same effect. Article 2341 of the Colombian Civil Code provides for extracontractual liability and article 831 of the Colombian Commercial Code prohibits unjust enrichment. The SAC contains sufficient allegations that defendant violated the duty of good faith, and of defendant's wrongful or negligent conduct, and that defendant was unjustly enriched. Notably, neither of defendant's experts refuted plaintiff's expert's conclusion that plaintiff stated a claim for violation of the duty of good faith, wrongful or negligent conduct, or unjust enrichment.[FN1]
The fifth and sixth causes of action state claims for disloyal or unfair competition under Colombian law. Defendant contends that a claimant must allege that the misconduct had the purpose of maintaining or increasing market share. However, article 2 of Law 256 of 1996 says that competitive purpose is presumed when an action maintains or increases market share, but it does not say that [*3]market share is the only way to show a competitive purpose. In any event, plaintiff's expert sufficiently explained how the SAC satisfied article 2's requirement of a competitive purpose.
Defendant also contends that the alleged misconduct neither had nor was intended to have its main effects on the Colombian market. However, plaintiff's expert explained that the main effects of defendant's disparagement of plaintiff to its investor network and inducement of a third party to terminate its contract with plaintiff took place in the Colombian market, as plaintiff's "principal place of business and most of the investors in its network are in Colombia, and [plaintiff] consistently marketed [defendant's] funds to Colombian investors, many of which [defendant] targeted as possible investors in Fund VI."
Defendant's expert asserts that "for Law 256, it is not sufficient to claim that the plaintiff . . . has its principal place of business in Colombia." However, at least for the fifth cause of action (disparagement), plaintiff has alleged more than the location of its principal place of business. As for the sixth (the termination of plaintiff's contract with a U.S. company), the conflict between the parties' experts creates an issue of fact, making the claim inappropriate for CPLR 3211 dismissal (see generally Read v Lehigh Val. R.R. Co., 284 NY 435, 444 [1940]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 27, 2023

Footnotes

Footnote 1: It is true that "[e]xpert opinion as to a legal conclusion is impermissible" (Colon v Rent-A-Center, 276 AD2d 58, 61 [1st Dept 2000]). However, Colon did not involve expert opinions on foreign law.